SO ORDERED: January 28, 2013.



Robyn L. Moberly
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| PERRY DAN CRUSE, d/b/a ) | |
| CRUSE HARDWOODS ) | CASE NO. 12-8154-RLM-13 |
| ) | |
| Debtor ) | |

**ORDER SUSTAINING DEBTOR'S OBJECTION
TO CLAIM OF DONALD FREYBERGER**

This case came before the Court on January 14, 2013 upon the Debtor's objection to the claim filed by Donald Freyberger ("Freyberger") as well as Freyberger's objection to confirmation of the Debtor's chapter 13 plan. For the reasons stated below, the Court SUSTAINS the Debtor's objection to Freyberger's claim. Because Freyberger's plan objection and the Debtor's objection to Freyberger's claim are based on the same facts and theory, the Court, by separate order, will overrule his objection to the Debtor's chapter 13 plan.

1

*Background*

The Debtor operates a business known as "Cruse Hardwoods" which buys standing timber and resells it after it is cut. "Cruse Hardwoods" is an assumed business name of the Debtor and is not incorporated. On February 26, 2011, Cruse Hardwoods and Freyberger entered into a "Cruse Hardwoods Timber Contract" (the "Contract") whereby Freyberger allowed Cruse Hardwoods to harvest "120 choice trees" located on Freyberger's land in Dubois County in exchange for payment from Cruse. Freyberger was to receive a percentage of the net proceeds from the sale of the cut timber and the percentage to be paid depended on whether the net proceeds received were from veneer logs, saw and rotary logs or pallet logs. The contract gave Cruse Hardwoods six (6) months to cut the trees.

The Debtor filed his voluntary chapter 13 bankruptcy on July 10, 2012 and scheduled Freyberger as the holder of a general unsecured claim in the amount of $9,000 for "potential liability arising from debtor's involvement with Cruse Hardwoods". Freyberger filed a proof of secured claim in the amount of $15,150. On the face of the claim, Freyberger listed "Timber contract and timber removed from Claimant's land" as the basis for the claim and "criminal acts 523(a)(2)" as the basis for perfection. The Debtor objected to Freyberger's claim on the basis that it contained no supporting documentation of a lien or security interest. Freyberger's response contends that the debt owed to him is nondischargeable because it "is the result of criminal activity by the debtor" and that Freyberger "has a common law Vendor's Lien in the timber and its

2

proceeds". [1]

### *Discussion*

Section 502(a) provides that a filed claim is deemed allowed unless a party in interest objects to it. Freyberger contends that the debtor's property (timber) is subject to his security interest and therefore, his claim is secured.

Although all property in which a debtor has a legal or equitable interest on the filing date becomes "property of the estate" under Section 541, the nature and extent of a debtor's interest in such property is determined by state law. *Matter of Jones*, 768 F.2d 923, 926 (7th Cir. 1985). The parties do not dispute that the Debtor has a legal interest in the timber. The issue is whether the creditor, Freyberger, has a perfected security interest in the timber.

Article 9 of the Uniform Commercial Code (UCC) governs the creation and perfection of liens in personal property. See, *In re FV Steel and Wire Co.*, 310 B.R. 390, 391 (Bankr. E. D. Wis. 2004).

Freyberger claims that he holds a "vendor's lien" in the *timber* that the Debtor cut. The cases he cites for that proposition do not support his argument and one of the cases he cites in fact holds that a vendor's lien arises only in the context of the sale of

---

[1] It should be noted at this juncture that the nondischargeability of a claim is a separate and distinct issue from whether the claim is secured. A nondischargeable claim need not be paid in full, or paid at all, under a chapter 13 plan, because it survives the bankruptcy and the claimant holding the nondischargeable claim can pursue collection after the debtor receives a discharge. The deadline to file a complaint to determine dischargeability under §523(a)(2) here was October 22, 2012 and Freyberger filed no such complaint. Therefore, any claim of nondischargeability has been waived.

3

real property. [2]  Under Indiana law, no vendor's lien can arise on personal property. *Prell v. Trustees of Baird & Warner Mortg. & Realty Investors*, 179 Ind. App. 642, 386 N.E.2d 1221 (1979).  Here, the timber was personal property, and creation and perfection of security interests in personal property are governed by Indiana's version of the UCC.  Under Ind Code §26-1-9.1-102 (44), both "standing timber that is to be cut and removed under a conveyance or contract for sale" and timber already harvested are classified as "goods".  Both "attachment" and "perfection" of a security interest are needed in order to enforce a security interest in goods against the debtor and third parties.  "Attachment" relates to the creation of the security interest as between the secured party and the debtor and requires that a debtor have rights in the collateral he intends to pledge to the secured party.  Attachment involves the execution of a written security agreement between the debtor and the secured party which describes the collateral so pledged unless the secured party is in possession of the collateral.  "Perfection" is an additional step which makes the security interest effective against third parties.  *Fifth Third Bank v. Comark, Inc.*, 794 N.E.2d 433, 438 (Ind. App. 2003).  *Allen v. First Nat'l Bank of Monterey*, 845 N.E.2d 1082, 1085 (Ind. App. 2006).

A security interest in "timber to be cut" is perfected by filing a financing statement with the office designated for the recording of a mortgage on the related real property,

---

[2] *Hostatter v. Auman,* 119 Ind. 7, 20 N.E. 506 (Ind. 1889) held that a contract for the sale of growing timber had to be in writing and that all provisions and "understandings" are merged into the writing and cannot be varied by parol evidence. There was no discussion in that case as to the propriety of a "vendor's lien" in personal property. In *Lincoln Nat'l Life Ins. Co. v. Overmyer*, 530 N.E.2d 784 (Ind App. 1988), the court held that, where a seller under a land contract conveyed the property outright to the buyer, a vendor's lien arose by implication in favor of the seller for the unpaid purchase price.  Finally, the court in *Prell v. Trustees of Baird & Warner Mtg.*, 179 Ind. App. 642, 386 N.E.2d 1221 (Ind. App. 1979) determined that a vendor's lien arises only in regard to the sale of real property.

4

which is county recorder's office. Ind Code §26-1-9.1-501(a)(1)(B); Ind Code §32-21-4-1(a)(1).  A security interest in timber already cut is perfected by filing a financing statement with the secretary of state's office.  Ind Code §26-1-9.1-501(a)(2).

Assuming for argument's sake that there was a security interest created in favor of Freyberger, [3] there is nothing in the record that suggests it was perfected.  There was no evidence of any filing in the Dubois County Recorder's office or the Secretary of State's office.  Rule 3001(d) of the Federal Rule of Bankruptcy Procedure further provides that if a claimant contends that it has a security interest in the debtor's property, evidence that the security interest has been perfected must accompany the proof of claim.  No such evidence accompanied the proof of claim.  With no proof of a written security interest or the filing a financing statement in either the Dubois County Recorder's office or the Secretary of State's office, Freyberger has not proven that he holds a secured claim.  Without more, his claim is unsecured.

Accordingly, the Debtor's objection to Freyberger's claim is SUSTAINED.

# # #

Distribution:

Elizabeth Hahn, Attorney for the Debtor
Steven E. Ripstra, Attorney for Donald Freyberger
Robert Brothers, Chapter 13 Trustee

---

[3] This is, indeed, only an assumption.  Certainly, Freyberger did not introduce any evidence of a written security agreement.  The Court finds here that Indiana's version of the UCC controls the creation and perfection of any security interest Freyberger thought he had.  Those provisions were not followed, thus, relegating his claim to unsecured status.  Therefore, a discussion as to creation of the security interest and whether it attached is not essential to the Court's ruling.